UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CAROL LANGHALS,

      Plaintiff,

v.                                Case No:      3:15-cv-461-J-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Carol Langhals, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."  *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the

use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

Only after the Commissioner meets this burden does the burden shift back to the claimant to show

that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty*

*v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

Plaintiff filed an application for a period of disability and DIB on October 19, 2011,

alleging disability beginning January 1, 2006.  (Tr. 139-45, 166).  Plaintiff's application was

denied initially on December 22, 2011, and upon reconsideration on February 28, 2012.  (Tr. 83-

87, 93-96).  Plaintiff requested a hearing and, on March 26, 2013, a hearing was held before

Administrative Law Judge Teresa J. McGarry (the "ALJ").  (Tr. 31-58).  On July 19, 2013, the

ALJ entered an unfavorable decision.  (Tr. 16-30).  Plaintiff requested review of the ALJ's decision

and the Appeals Council denied review on February 27, 2015.  (Tr. 1-4).  Plaintiff initiated the

instant action by Complaint (Doc. 1) filed on March 14, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff did not engage in

substantial gainful activity during the period from her alleged onset date of January 1, 2006,

through her date last insured of December 31, 2006.  (Tr. 18).  At step two, the ALJ found that

Plaintiff has the following severe impairments:  status-post brain craniotomy with cyst removal,

and chronic obstructive pulmonary disease ("COPD").  (Tr. 18).  At step three, the ALJ determined

that Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(Tr. 26).

Before proceeding to step 4, the ALJ determined that through Plaintiff's day last insured, Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant must avoid concentrated exposure to pulmonary irritants and exposure to recognized hazards such as unprotected heights and dangerous moving machinery.

(Tr. 20).  At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a statement clerk and companion sitter.  (Tr. 24).  The ALJ concluded that Plaintiff was not under a disability at any time from January 1, 2006, the alleged onset date, through December 31, 2009, the date last insured. (Tr. 24).

## II.      Analysis

On appeal, Plaintiff raises a single issue, whether the "ALJ erred by not including all of Plaintiff's limitations in the hypothetical question to the VE." (Doc. 14 p. 5).  At step four, it is a claimant's burden to prove the inability to perform previous work and it is not necessary for an ALJ to consider VE testimony in determining whether a claimant can perform past relevant work. *See Frizzo v. Astrue*, 2012 WL 3668049, at *9 (M.D. Fla. Aug. 7, 2012) (citing *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990)).  In this case, the ALJ determined at step four that Plaintiff can perform her past relevant work as a statement clerk or as a companion sitter.  As the ALJ was not required to rely on the testimony of a VE in making this decision, the Court finds no error in the ALJ's questioning of the VE at the administrative hearing.

Reading Plaintiff's memorandum in the most favorable light, Plaintiff is not challenging the ALJ's questioning of the VE, but rather whether substantial evidence supports the ALJ's RFC determination.  Specifically, Plaintiff contends that the ALJ should have found greater limitations in Plaintiff's RFC due to her cognitive issues concerning forgetfulness and periods of confusion.

(Doc. 14 p. 7-8).  The Court rejects this argument, however, because substantial evidence supports the ALJ's RFC determination.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record.  *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that he became disabled on or prior to the expiration of his insured status.  *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove he was disabled on or before the date last insured for DIB).

As noted above, "[s]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion."  *Crawford*, 363 F.3d at 1158.  Even if the evidence preponderates against the Commissioner's findings, the Court must still affirm if the decision reached is supported by substantial evidence.  *Id.*  Thus, the Court will affirm the ALJ's RFC determination so long as it is supported by such relevant evidence that a reasonable person would accept as adequate to support for his determination.

Here, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not have a significant effect on her ability to perform basic mental work activities on or before December 31, 2009. (Tr. 19-23).  Plaintiff's lack of treatment for mental health complaints prior to the expiration of her insured status, the reports of examining psychologists, and Plaintiff's activities support the ALJ's decision. (Tr. 21-23).

As the ALJ discussed, the record does not reveal more than mild cognitive limitations prior to the date Plaintiff was last insured for DIB. (Tr. 19-23). For example, on October 16, 2007, Russell Addeo, Ph.D., ABPP-CN, a neuropsychologist, noted that testing results indicated Plaintiff's intellectual abilities were in the average range, and her Full-Scale IQ score was in the average range and "relatively intact."  (Tr. 742). Plaintiff's attentional skills were relatively intact for simple auditory attention span, complex auditory verbal working memory, psychomotor speed, selective attention, and accuracy of visual scanning/selective attention. (Tr. 743). Plaintiff demonstrated mildly impaired processing speed for visual scanning and word reading and color naming.  (Tr. 743). Although Plaintiff demonstrated mildly impaired nonverbal problem solving, ability to maintain set, motor inhibition, and motor sequencing for her right hand, her executive skills were relatively intact for self-monitoring, efficiency of non-verbal problem solving, alternating attention, cognitive flexibility, non-verbal reasoning, susceptibility to interference, verbal phonemic fluency, and motor sequencing for her left hand. (Tr. 743). According to Dr. Addeo, Plaintiff's verbal memory was "relatively intact with some mild inefficiency," and her immediate and delayed recall were both in the above average to superior range. (Tr. 743). Personality and emotional functioning testing was not suggestive of significant psychological distress. (Tr. 743).

Dr. Addeo concluded Plaintiff "demonstrated some mild cognitive weaknesses" and diagnosed Cognitive Disorder NOS, Mild.  (Tr. 743-44). The results of Plaintiff's testing were "very consistent with the previous findings on the neuropsychological evaluation conducted by Dr. Wertheimer in 2005," when Plaintiff was still working, and her condition was therefore likely static.  (Tr. 741, 744). Indeed, Plaintiff reported that she babysat occasionally and volunteered at times, and she was interested in returning to her work as a CNA and volunteering with the elderly. (Tr. 741). Dr. Addeo concluded that Plaintiff "could work at least a part time job," and, if she chose not to, she should consider volunteering.  (Tr. 744).  Dr. Addeo added in a subsequent entry that Plaintiff's weakness in her spatial skills could be compensated for with treatment, which the ALJ noted suggested Plaintiff could manage her symptoms.  (Tr. 21-22, 662). As the ALJ pointed out, Dr. Addeo's report supports the conclusion that Plaintiff's limitations were relatively mild in nature and that Plaintiff's symptoms resulted in only mild limitations through the date last insured. (Tr. 22).

In addition, the ALJ discussed the February 8, 2010 report of Laura L. Wulff, Ph. D., a neuropsychologist and found it supports the conclusion that Plaintiff did not experience more than mild limitations prior to the date last insured.  (Tr. 19, 22, 674-78).  Dr. Wulff's findings were relatively consistent with previous neuropsychological findings in 2005 and 2007.  (Tr. 677). While Plaintiff demonstrated some modest decline in nonverbal executive functioning, visuospatial memory, and left-handed fine motor speed, she demonstrated many cognitive strengths in other domains and modest improvements in nine measures. (Tr. 677).  Dr. Wulff opined Plaintiff's "cognitive profile is most suggestive of a mild cognitive disorder," which is consistent with the ALJ's determination that Plaintiff experienced only mild limitations due to her

cognitive condition, which remained stable through her date last insured for DIB purposes. (Tr. 19-23, 677).

The ALJ cited other records that support the conclusion that Plaintiff's condition did not decline between the period of Dr. Addeo's evaluation and the date last insured. (Tr. 22). As the ALJ pointed out, on October 8, 2007, Carols Gama, M.D., a neurologist, found Plaintiff's recent and remote memory, attention span, concentration, language and fund of knowledge were either normal or appropriate for her age. (Tr. 749). Dr. Gama noted that Plaintiff reported no recurrence of seizures since her last visit and only an "occasional episode of being forgetful as well as multiple other symptoms that [he was] unable to explain from a neurological stand point." (Tr. 750). Dr. Gama also noted that Plaintiff reported "an increase in stress due to her working activities." (Tr. 750).

On January 4, 2008, Dr. Gama stated that Plaintiff felt she was "doing over all well," except for some stress due to her sister's recurrence of cancer; she had not experienced any seizures; and she was cognitively "stable compared to a study from 2005." (Tr. 801). On June 3, 2008, Plaintiff reported to Dr. Gama that she "feels she is doing over all well" and had no seizures, and, although her forgetfulness had not improved, her periods of confusion were "better." (Tr. 794). Dr. Gama's impression was Plaintiff's impairment was "improving by record." (Tr. 798).

In addition, the ALJ noted that diagnostic images of Plaintiff's brain were consistent with the conclusion that Plaintiff was not disabled during the relevant period and was able to perform a reduced range of sedentary exertional work. (Tr. 22). For example, George Vega, M.D. concluded a June 2009 brain MRI revealed evidence of a previous craniotomy, "slight" prominence of the right sylvan fissure, no definite recurrent arachnoid cyst, and no focal enhancing lesion. (Tr. 511). A July 2007 MR of the brain revealed "mild" atrophy. (Tr. 425). Further, Dr. Vega concluded that

a November 2010 brain MRI revealed "no significant changes since [the] prior examination." (Tr. 510). This evidence further supports the ALJ's conclusion that Plaintiff's condition had not deteriorated by the date last insured. (Tr. 19-23).

The ALJ also pointed out that Plaintiff reported performing household chores, shopping for groceries with her husband, maintaining her own hygiene, preparing simple meals, having good relationships with her siblings, mowing "the middle" of her lawn, cleaning her swimming pool, attending church, and completing crossword puzzles. (Tr. 19, 21, 23, 186-89, 214-17, 485). Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. See 20 C.F.R. §§ 404.1529(c)(3)(i); Social Security Ruling 96-7p. Given the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling symptoms and limitations prior to December 31, 2009, were not entirely credible.

Plaintiff has failed to show that the ALJ erred at step four of the sequential evaluation process or that the ALJ's RFC determination is not supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's decision on appeal.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties